**COMMONWEALTH of Kentucky,**
**Appellant,**

v.

**Francisco BARROSO, Appellee.**

**No. 2001–SC–0793–DG.**

Supreme Court of Kentucky.

Dec. 18, 2003.

A.B. Chandler, III, Attorney General, State Capitol, Vickie L. Wise, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellant.

Bruce P. Hackett, Deputy Appellate Defender of the Jefferson District, Louisville, Counsel for Appellee.

COOPER, Justice.

Appellee, Francisco Barroso, was indicted by a Jefferson County grand jury for rape in the first degree and robbery in the second degree, both perpetrated on May 22, 1999, against his former girlfriend, J.H., then age sixteen. At trial, Appellee and J.H. gave contradictory versions of what occurred. The jury believed J.H.'s version and convicted Appellee of both offenses. He was sentenced to concurrent terms of ten years and five years in prison.

On Appellee's appeal to the Court of Appeals, the Commonwealth conceded reversible error in permitting the prosecutor to impeach Appellee with evidence of a juvenile adjudication that occurred prior to the enactment of KRS 610.320(4). No further review was sought with respect to that issue. We note, however, that subsequent to the rendition of the Court of Appeals' opinion, we held in *Manns v. Commonwealth*, Ky., 80 S.W.3d 439, 442, 446 (2002), that a virtually identical statute, KRS 532.055(2)(a)6, was not subject to KRS 446.080(3) and the Ex Post Facto Clause because the statute related to practice and procedure, but that, for the same reason, the statute was unconstitutional because it violated the separation of powers. Ky. Const. § 28.

Relying on *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694, 701–03 (1994), the Court of Appeals further found reversible error in the trial judge's denial of defense counsel's request to inspect records pertaining to J.H.'s psychotherapy at Baptist East Hospital for exculpatory information, including information that would impeach her credibility as a witness. Instead, the trial judge conducted an *in camera* inspection of the records outside of the presence of counsel and unilaterally concluded that they contained no information relevant to Appellee's constitutional rights to due process and confrontation. We granted the Commonwealth's motion for discretionary review of this issue to consider the extent to which a criminal defendant's constitutional rights affect a prosecution witness's absolute privilege against nondisclosure of records of her own psychotherapy.

We note at the outset that this is not a case where the witness has voluntarily waived the psychotherapist-patient privilege, as in *McKinney v. Commonwealth*, Ky., 60 S.W.3d 499, 506–07 (2001), or where a prosecutor or grand jury has attempted to gain access to records of a criminal defendant's own psychotherapy, as in *Stidham v. Clark*, Ky., 74 S.W.3d 719 (2002), or where the evidence sought falls either outside the privilege or within an exception specified in the rule, itself, as in *Myers v. Commonwealth*, Ky., 87 S.W.3d 243 (2002). Rather, as in *Eldred, supra*, at 701–02, and *Hodge v. Commonwealth*, Ky., 17 S.W.3d 824, 843–44 (2000), the evidence sought here pertains to the psychotherapy of a witness who has not waived the privilege and falls squarely within its parameters. Thus, we reach the issue that was anticipated in *Myers, supra*, at 244 n. 1.

The issue arose in this case when the prosecutor, in response to a discovery order, provided defense counsel with copies of the records of Kosair Children's Hospital, where J.H. was medically examined on May 22, 1999, shortly after she reported to police that Appellee had raped and robbed her. Those records reflect that J.H. stat-

ed to a nurse while being examined that she had been previously hospitalized for depression and was taking antidepressant medications. The Kosair Children's records also contained a report reflecting that J.H. had been admitted to Baptist East Hospital for depression "some time ago" after she "broke up" with a boyfriend and her best friend moved out of town.

■ On the morning of January 11, 2000, the first day of trial, defense counsel moved that the records of J.H.'s treatment at Baptist East Hospital be subpoenaed and examined by the trial judge "in the presence of the prosecutor and defense counsel" as required by *Eldred, supra,* at 702. Instead, the trial judge cleared the courtroom of spectators and ordered J.H. to give sworn testimony concerning her treatment at Baptist East Hospital. J.H., then age seventeen, was not requested to waive her psychotherapist-patient privilege nor even informed that she had such a privilege. We conclude that her compelled testimony did not constitute a voluntary waiver of the privilege. *See* KRE 509 (privilege waived by holder's voluntary disclosure); KRE 510 ("A claim of privilege is not defeated by a disclosure which was: (1) Compelled erroneously; or (2) Made without opportunity to claim the privilege."); *cf. Riverside Hosp., Inc. v. Garza,* 894 S.W.2d 850, 857 (Tex.App.1995) (production of privileged records pursuant to court order is not a voluntary waiver).

J.H. testified in response to the trial judge's questioning that she was admitted to Baptist East in November 1998 after attempting suicide by ingesting an overdose of pain medication (Ibuprofen) and that she had received treatment for depression during that admission. After hearing J.H.'s testimony, defense counsel again requested that the records be obtained and produced for inspection. Pursuant to that request, the trial judge (de-spite characterizing the request as a "fishing expedition") entered an order requiring Baptist East to produce the records. The order was served, and the records were obtained on the morning of the second day of trial. The trial judge conducted an *in camera* inspection of the records during the noon recess and, as previously noted, unilaterally concluded that the records contained no exculpatory evidence or information otherwise pertinent to J.H.'s credibility as a witness. He denied defense counsel's request to personally inspect the records.

KRE 507(b), defining the psychotherapist-patient privilege, provides, *inter alia:*

(b) General rule of privilege. A patient, or the patient's authorized representative, has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purpose of diagnosis or treatment of the patient's mental condition, between the patient, the patient's psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

(c) Exceptions. There is no privilege under this rule for any relevant communications under this rule:

(1) In proceedings to hospitalize the patient for mental illness, if the psychotherapist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization;

(2) If a judge finds that a patient, after having been informed that the communications would not be privileged, has made communications to a psychotherapist in the course of an examination ordered by the court, provided that such communi-

cations shall be admissible only on issues involving the patient's mental condition; or

(3) If the patient is asserting that patient's mental condition as an element of a claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of a claim or defense.

Other than the three specified exceptions, none of which applies here, the psychotherapist-patient privilege is an "absolute" privilege, *i.e.*, one that is not subject to avoidance because of a "need" for the evidence. *See Jaffee v. Redmond,* 518 U.S. 1, 17–18, 116 S.Ct. 1923, 1932, 135 L.Ed.2d 337 (1996) ("Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.").[1] *Compare* KRE 506 (counselor-client privilege) and CR 26.02(3)(a) (work product privilege) which are "qualified" privileges. KRE 506(d)(2) allows an exception to the counselor-client privilege "[i]f the judge finds: (A) [t]hat the substance of the communication is relevant to an essential issue in the case; (B) [t]hat there are no available alternate means to obtain the substantial equivalent of the communication; and (C) [t]hat the need for the information outweighs the interest protected by the privilege." CR 26.02(3)(a) allows an exception to the work product privilege "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

The issue here, however, is not whether Appellee's "need" for the evidence should be balanced against J.H.'s interest in maintaining the confidentiality of her psychotherapy, but whether the constitutional rights afforded to a criminal defendant by the Fifth, Sixth, and Fourteenth Amendments to United States Constitution and section 11 of the Constitution of Kentucky prevail over a state policy interest expressed in a statute or rule creating an evidentiary privilege. As a general proposition, constitutional rights prevail over conflicting statutes and rules.

The federal Constitution is the paramount law of the land. A statute of a state in conflict with it is void. State statutes, therefore, when they come within the domain of the powers of government over which the federal Constitution extends, must be read and applied with reference to the provisions of that instrument.

*Commonwealth v. Int'l Harvester Co. of Am.,* 131 Ky. 551, 115 S.W. 703, 706 (1909), *overruled on other grounds by Gay v. Brent,* 166 Ky. 833, 179 S.W. 1051, 1058 (1915).

The United States Supreme Court has yet to decide whether a criminal defendant has the right to compel a third party to produce exculpatory information protected by an absolute privilege. *Jaffee, supra,* was not a criminal case, thus did not reach the constitutional issues. *Jaffee* noted, however, that "[a]lthough it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way ...." *Id.* at 18 n. 19, 116 S.Ct. at 1932 n. 19. In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Court held that a state's interest in the

---

**1.** Federal privilege rules are not codified and in criminal cases remain subject to common

law development. *Stidham v. Clark, supra,* at 723 n. 3.

confidentiality of juvenile records must yield to a criminal defendant's Sixth Amendment right to confront the witnesses against him. *Id.* at 320, 94 S.Ct. at 1112. *Davis,* however, did not involve a discovery right but the trial right to cross-examine the prosecuting witness, a juvenile, about his criminal probationary status for the purpose of showing bias. *Id.* at 311, 94 S.Ct. at 1108.

In *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the Court held that a criminal defendant has a due process right to discover exculpatory evidence contained in privileged records. *Id.* at 56–58, 107 S.Ct. at 1001–02. However, *Ritchie* involved discovery of records of a state's child protection services agency that enjoyed only qualified immunity. *Id.* at 57–58, 107 S.Ct. at 1001. Indeed, the Court specified that it was expressing no opinion as to whether the result would have been the same had the statute at issue granted an absolute privilege. *Id.* at 58 n. 14, 107 S.Ct. at 1002 n. 14.

The dispositive issue in *Ritchie* was the government's obligation under the Due Process Clause to provide discovery of records *in its possession* containing evidence both favorable to the accused and material to guilt or punishment. *Id.* at 57, 107 S.Ct. at 1001 (citing *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963)). *See also Ballard v. Commonwealth,* Ky., 743 S.W.2d 21, 22–23 (1988). Impeachment evidence falls within that category. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 269–70, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). Here, however, J.H.'s records were not in the Commonwealth's possession and thus not within the holding in *Ritchie.*

A plurality in *Ritchie* specifically rejected a claim that the Confrontation Clause afforded a criminal defendant the right to pretrial discovery of records containing impeachment evidence. *Id.* at 52–55, 107 S.Ct. at 998–1000 (citing *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) *(per curiam)* "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (emphasis in original)). The issue in *Fensterer,* however, was whether an expert witness's testimony should have been stricken in its entirety because of the witness's inability to recall how he had determined that the victim's hair samples had been forcibly removed. *Id.* at 17, 106 S.Ct. at 293. *Fensterer* did not involve a defendant's right to obtain evidence affecting the credibility of a prosecution witness. In his concurring opinion in *Ritchie,* Justice Blackmun suggested that the Confrontation Clause is violated when adequate cross-examination is impeded by the *denial of access* to impeachment evidence. *Ritchie, supra,* at 64–65, 107 S.Ct. at 1005 ("I do not believe, however, that a State can avoid Confrontation Clause problems simply by deciding to hinder the defendant's right to effective cross-examination, on the basis of a desire to protect the confidentiality interests of a particular class of individuals, at the pretrial, rather than at the trial, stage."). *See also id.* at 66, 107 S.Ct. at 1006 (Brennan, J., dissenting).

*Ritchie* specifically avoided deciding whether application of the privilege violated the Sixth Amendment's Compulsory Process Clause, holding that the defendant in that case had a due process right to exculpatory evidence in the possession of the government per *Brady, supra,* and

that "compulsory process provides no *greater* protections in this area than those afforded by due process." *Id.* at 57, 107 S.Ct. at 1001 (emphasis in original). Of course, in the case *sub judice,* J.H.'s psychotherapy records are not in the possession of the Commonwealth but in the possession of a third party, Baptist East Hospital, making the *Brady* due process analysis applied in *Ritchie* inapplicable. Thus, we must decide whether application of the psychotherapist-patient privilege violates Appellee's rights under the Compulsory Process Clause.

■ In *United States v. Nixon,* 418 U.S. 683, 708, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the special prosecutor sought evidence, *i.e.,* secretly recorded conversations of the defendants, in the possession of a third party, the President of the United States. While acknowledging the existence of a "Presidential privilege" with respect to private conversations between the President and his closest advisors, *id.* at 708, 94 S.Ct. at 3107–08, the Court held that the privilege could not bar production of evidence essential to a criminal *prosecution,* stating that, "[t]o ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." *Id.* at 709, 94 S.Ct. at 3108. Unlike the case *sub judice,* the privilege in *Nixon* was not held by a prosecution witness but by the third party who possessed the records. And, of course, the Compulsory Process Clause operates in favor of criminal defendants, not prosecutors. U.S. Const. amend. VI. ("[T]he accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor ...." [2]) Thus, while citing to the Clause in support of its holding, *id.* at 711, 94 S.Ct.

at 3109, the Court, in *Nixon* actually grounded its holding in the need for the "fair administration of criminal justice." *Id.* at 711–12, 94 S.Ct. at 3109.

[T]his presumptive privilege must be considered in light of our historic commitment to the rule of law. This is nowhere more profoundly manifest than in our view that "the twofold aim (of criminal justice) is that guilt shall not escape or innocence suffer."

*Id.* at 708–09, 94 S.Ct. at 3108 (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).

In *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Court held that "[t]he rights to confront and cross-examine witnesses *and to call witnesses in one's own behalf* have long been recognized as essential to due process," *id.* at 294, 93 S.Ct. at 1045 (emphasis added), and that state evidentiary rules cannot be applied "mechanistically" to deny a criminal defendant the due process right to present a defense. *Id.* at 298, 302, 93 S.Ct. at 1047, 1049. In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Court held that the government's informant privilege must give way to an accused's right to defend against criminal charges. *Id.* at 60–61, 77 S.Ct. at 628. And in *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Court held that a state statute prohibiting accomplices or coconspirators from testifying on behalf of one another could not prevail over a criminal defendant's right to compulsory process, which was held to include not only the right to compel attendance of defense witnesses *but also the right to introduce their testimony into evidence. Id.* at 23, 87 S.Ct. at 1925. "The Framers of the Constitution

---

**2.** This language in the Sixth Amendment creating the right to compulsory process is identical to the language creating the same right in section 11 of the Constitution of Kentucky.

did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use." *Id.*

Thus, to date, the United States Supreme Court has held that the denial of the right to impeach a prosecution witness violates the Confrontation Clause (*Davis, supra*) but has yet to muster a majority on whether the denial of pretrial access to impeachment evidence is also a denial of confrontation rights (*Ritchie, supra*). It has declared that evidentiary rules (*Chambers, supra*) and at least one recognized evidentiary privilege (*Roviaro, supra*) must yield to a criminal defendant's due process right to present a defense. It has also stated that a defendant's due process right to discover exculpatory evidence in the possession of the government cannot be defeated by a qualified privilege (*Ritchie, supra*), and that the "fair administration of justice" requires that privileged inculpatory evidence in the hands of a third party be turned over to the prosecution (*Nixon, supra*). It has further held that the right to compulsory process includes the right to elicit favorable testimony from defense witnesses (*Washington, supra*), but has yet to specifically decide whether that same right prevails over an absolute privilege (though *Washington, supra*, provides a close analogy).

At least one state court has held that the absolute privilege afforded to news reporters not to reveal the identity of their sources [3] must yield to a criminal defendant's right to compulsory process to obtain exculpatory evidence. *Matter of Farber*, 78 N.J. 259, 394 A.2d 330, 337 (1978). Applying the logic of that case to the Supreme Court's holding in *Washington, supra*, we conclude that the Compulsory Process Clause affords a criminal de-

fendant the right to obtain and present exculpatory evidence, including impeachment evidence, in the possession of a third party that would otherwise be subject to the psychotherapist-patient privilege.

A majority of the state courts that have addressed this issue have held that a criminal defendant, upon a preliminary showing that the records likely contain exculpatory evidence, is entitled to some form of pretrial discovery of a prosecution witness's mental health treatment records that would otherwise be subject to an "absolute" privilege. *E.g., State v. Storlazzi*, 191 Conn. 453, 464 A.2d 829, 832–33 (1983); *Bobo v. State*, 256 Ga. 357, 349 S.E.2d 690, 692 (1986) (plurality opinion); *State v. Peseti*, 101 Hawai'i 172, 65 P.3d 119, 128 (2003); *People v. Dace*, 114 Ill.App.3d 908, 70 Ill.Dec. 684, 449 N.E.2d 1031, 1035 (1983), *aff'd*, 104 Ill.2d 96, 83 Ill.Dec. 573, 470 N.E.2d 993 (1984), *overruled on other grounds as recognized by People v. Hamilton*, 283 Ill.App.3d 854, 219 Ill.Dec. 301, 670 N.E.2d 1189, 1194 (1996); *Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992, 1002 (1991); *People v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557, 562 (1994); *State v. McBride*, 213 N.J.Super. 255, 517 A.2d 152, 160 (Ct.App.Div.1986); *People v. Acklin*, 102 Misc.2d 596, 424 N.Y.S.2d 633, 636 (Sup.Ct.1980); *State v. Middlebrooks*, 840 S.W.2d 317, 332 (Tenn. 1992), *superseded on other grounds by* Tenn.Code Ann. § 39–13–392; *State v. Green*, 253 Wis.2d 356, 646 N.W.2d 298, 304–12 (2002); *Gale v. State*, 792 P.2d 570, 581 (Wyo.1990). *Contra People v. Hammon*, 15 Cal.4th 1117, 65 Cal.Rptr.2d 1, 938 P.2d 986, 993 (1997); *People v. Dist. Court*, 719 P.2d 722, 727 (Colo.1986); *State v. Famiglietti*, 817 So.2d 901, 906 (Fla.Dist. Ct.App.2002); *Goldsmith v. State*, 337 Md. 112, 651 A.2d 866, 873 (1995); *Common-*

---

**3.** *See* KRS 421.100.

wealth v. Wilson, 529 Pa. 268, 602 A.2d 1290, 1296–98 (1992).

In Eldred v. Commonwealth, supra, we held that a criminal defendant was entitled to discover exculpatory evidence contained in the psychiatric treatment records of a witness for the prosecution, citing People v. Dace, supra, at 1034–35, and that if the records are not in the possession of the Commonwealth, they should be obtained by subpoena duces tecum or, as here, by court order. Eldred, 906 S.W.2d at 701–02. Although Eldred did not specify reliance on the right to compulsory process as authority for that holding and implied that the authority lay in the rights of confrontation and due process, Id. at 702 nn. 5–6, such is implicit in its quotation of Dace that "[i]f necessary, the trial court should subpoena the records sought." Id. at 702. Relying further on Dace, supra, at 1035, Eldred also held that a defendant need show only "articulable evidence that raises a reasonable inquiry of a witness's mental health history" to be entitled to discovery, and that the articulable evidence "does not have to establish the relevance and materiality of the records sought, which would be impossible without access to the records." Id. at 702. Finally, Eldred held that the trial judge must conduct an in camera hearing "in the presence of the prosecutor and defense counsel" to determine which information would be both relevant and material to the witness's credibility. Id. (citing Dace, supra, at 1035).

▆▆▆ Eldred was tried prior to the adoption of the Kentucky Rules of Evidence; however, the language of the statutory psychiatrist-patient privilege in effect at that time, KRS 421.215(2) and (3) (repealed, 1990 Ky. Acts, ch. 88, § 92, eff. July 1, 1992 pursuant to 1992 Ky. Acts, ch. 324, § 33), was virtually identical to that of KRE 507(b) and (c). Thus, Eldred's holding that a criminal defendant's constitu-tional rights prevail over a state statute affording an absolute privilege for a witness's psychotherapy records applies under the regime of KRE 507 as it did under KRS 421.215. The relevancy of this type of evidence to a witness's credibility is universally recognized, e.g.:

> The capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. If as a result of a mental condition such capacity has been substantially diminished, evidence of that condition before, at and after the occurrence and at the time of trial is ordinarily admissible for use by the trier in passing on the credibility of the witness.

State v. Esposito, 192 Conn. 166, 471 A.2d 949, 955 (1984).

> Certain forms of mental disorder have high probative value on the issue of credibility. Although the debate over the proper legal role of mental health professionals continues to rage, even those who would limit the availability of psychiatric evidence acknowledge that many types of "emotional or mental defect[s] may materially affect the accuracy of testimony; a conservative list of such defects would have to include the psychoses, most or all of the neuroses, defects in the structure of the nervous system, mental deficiency, alcoholism, drug addiction and psychopathic personality."

United States v. Lindstrom, 698 F.2d 1154, 1160 (11th Cir.1983) (quoting Michael Juviler, Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, 48 Cal. L.Rev. 648, 648 (1960)).

> Factors a court should consider in allowing such evidence are the nature of the psychological problem, the temporal recency or remoteness of the condition, and whether the witness suffered from the condition at the time of the events to

which she is to testify. For example, a mental illness that causes hallucinations or delusions is generally more probative of credibility than a condition causing only depression, irritability, impulsivity, or anxiety.

*People v. Anderson,* 25 Cal.4th 543, 106 Cal.Rptr.2d 575, 22 P.3d 347, 391 (2001) (Kennard, J., concurring) (internal citations and quotations omitted).

 If the psychotherapy records of a crucial prosecution witness contain evidence probative of the witness's ability to recall, comprehend, and accurately relate the subject matter of the testimony, the defendant's right to compulsory process must prevail over the witness's psychotherapist-patient privilege. Upon a proper preliminary showing, described *infra,* the witness's psychotherapy records are subject to production for an *in camera* inspection to determine whether the records contain exculpatory evidence, including evidence relevant to the witness's credibility. We part company with *Eldred,* however, in several other respects.

As noted *supra, Eldred* held that the preliminary showing necessary to trigger an *in camera* review was "articulable evidence that raises a reasonable inquiry of a witness's mental health history." *Eldred, supra,* at 702 (quoting *Dace, supra,* at 1035). In retrospect, we conclude that a more restrictive test is required to preclude "fishing expedition[s] to see what may turn up," *Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951), and "unrestrained foray[s] into confidential records in the hope that the unearthing of some unspecified information would enable [the defendant] to impeach the witness." *Commonwealth v. Bishop,* 416 Mass. 169, 617 N.E.2d 990, 997–98 (1993) (internal quotation omitted).

A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem. To subject every witness in a criminal prosecution to an in camera review of their psychotherapist's records would be the invasion of privacy which the psychotherapist-patient privilege is intended to prevent.

*People v. Pack,* 201 Cal.App.3d 679, 248 Cal.Rptr. 240, 244 (1988) (citations omitted), *overruled on other grounds by People v. Hammon, supra,* at 990.

Other courts that permit pretrial discovery of privileged records have required that the defendant produce, at a minimum, articulable evidence sufficient to support a reasonable belief that the records contain exculpatory information. *Commonwealth v. Fuller,* 423 Mass. 216, 667 N.E.2d 847, 855 (1996) ("good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt"); *People v. Stanaway, supra,* at 562 ("reasonable probability that the privileged records are likely to contain material information necessary to his defense"); *State v. Gagne,* 136 N.H. 101, 612 A.2d 899, 901 (1992) ("reasonable probability that the records contain information that is material and relevant to his defense"); *State v. Green, supra,* at 310 ("specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence").

 In *Stidham v. Clark, supra,* we held that an *in camera* inspection of a defendant's psychotherapy records for the purpose of determining which entries were privileged and which were not could be conducted only upon receipt of evidence supporting "a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicabil-

ity ...." 74 S.W.3d at 727 (quoting *United States v. Zolin*, 491 U.S. 554, 574–75, 109 S.Ct. 2619, 2632, 105 L.Ed.2d 469 (1989)). No lower a standard should apply when a defendant seeks an *in camera* review of a witness's psychotherapy records for the purpose of determining whether they contain exculpatory evidence. Thus, we depart from the less restrictive standard established in *Eldred* and hold that *in camera* review of a witness's psychotherapy records is authorized only upon receipt of evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence.

We also depart from *Eldred*'s holding that the review must be conducted in the presence of the prosecutor and defense counsel. *Pennsylvania v. Ritchie, supra*, held that the defendant's constitutional right to a fair trial can be fully protected by an *in camera* inspection by the trial judge alone.

> To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting [privileged] information.... Neither precedent nor common sense requires such a result.
>
> An *in camera* review by the trial court will serve Ritchie's interest without destroying the Commonwealth's need to protect the [privileged information].

480 U.S. at 60–61, 107 S.Ct. at 1003. *See also People v. Stanaway, supra*, at 575 ("Only after the court has conducted the in camera inspection and is satisfied that the records reveal evidence necessary to the defense is the evidence to be supplied to defense counsel.").

Here, the trial judge's *in camera* inspection of J.H.'s psychotherapy records protected Appellee's constitutional rights without destroying J.H.'s interest in protecting the confidentiality of those portions of the records (in this case the entirety of the records) irrelevant to Appellee's interests. If, as here, discovery is denied, a conviction occurs, and an appeal is taken, the appellate court, upon request, can review the records and determine whether the trial judge's ruling was an abuse of discretion.[4] Appellee has not made that request in this case. However, in the interests of judicial economy, we have reviewed the records and determined that the trial judge correctly determined that they contain no exculpatory information.

▮▮ If the *in camera* inspection reveals exculpatory evidence, *i.e.*, evidence favorable to the accused and material to guilt or punishment, including impeachment evidence, that evidence must be disclosed to the defendant if unavailable from less intrusive sources. *Eldred, supra*, at 701; *cf. Ritchie, supra*, at 57, 107 S.Ct. at 1001; *see also State v. Peseti, supra*, at 129 (less intrusive sources); *State v. L.J.P.*, 270 N.J.Super. 429, 637 A.2d 532, 537 (Ct.App.Div.1994) (same).

Some jurisdictions hold that because the privilege belongs to the witness, the trial judge must obtain a limited waiver from the witness before conducting the *in camera* inspection, and an additional waiver with respect to any exculpatory evidence discovered during the inspection. If the witness refuses to waive the privilege, the witness is precluded from testifying, or, if the witness has already testified, the testimony is stricken from the record. *E.g.*,

---

**4.** The Court of Appeals gave counsel for both parties in this case access to the privileged records of J.H.'s treatment at Baptist East Hospital for the purpose of preparing briefs and argument, thus negating the protection afforded by the trial judge's *in camera* inspection. While such was consistent with the inspection procedure authorized in *Eldred,* it is inconsistent with the procedure established in this opinion.

*State v. Esposito, supra,* at 956; *People v. Stanaway, supra,* at 577; *State v. Shiffra,* 175 Wis.2d 600, 499 N.W.2d 719, 724–25 (1993), *modified on other grounds by State v. Green, supra,* at 309–10, 646 N.W.2d 298.

We view this procedure as unworkable or unwieldy in many common factual scenarios. If, as here, the holder of the privilege is a minor, the trial judge would be required to determine who has authority to assert or waive the privilege on the child's behalf. *Cf. Bond v. Bond,* Ky.App., 887 S.W.2d 558, 561 (1994) (holding in child custody case that parents could not assert or waive child's privilege and speculating, but not holding, that trial judge or guardian ad litem could do so on behalf of child). If, as here, the witness is the victim of the crime without whose testimony the prosecution could not prove its case, must the case be dismissed if the victim refuses to waive the privilege? If so, what of "the fair administration of justice" and the aim "that guilt shall not escape"? *Nixon,* 418 U.S. at 708–09, 94 S.Ct. at 3108–09. Our conclusion, *supra,* that a defendant's constitutional right to compulsory process prevails over a witness's statutory claim of privilege obviates the need to further complicate the procedure by placing the fate of the prosecution in the hands of a witness. And while it is one thing to say that testimony already presented can be stricken, it is doubtful that a curative admonition could "unring the bell" of the victim's subsequently stricken testimony. *Cf. United States v. Murray,* 784 F.2d 188, 189 (6th Cir.1986) (curative admonition did not "unring the bell" of inadmissible polygraph evidence).

We note in passing that application of compulsory process to obtain privileged records affords more protection for a cooperative witness who otherwise would be required to voluntarily waive the privilege and, thus, lose it. KRE 509. As noted *supra,* a witness whose privileged information is compelled by court order has not disclosed it voluntarily. Thus, the privilege remains intact for purposes other than the criminal proceeding in which it was compelled.

Accordingly, we reverse the Court of Appeals on the privilege issue and remand this case to the Jefferson Circuit Court for a new trial in accordance with the Court of Appeals' ruling on the impeachment issue.

All concur.