RENDERED:  JANUARY 27, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1422-MR

FEODIS BEAL                                                        APPELLANT

v.                 APPEAL FROM KENTON CIRCUIT COURT
                   HONORABLE PATRICIA M. SUMME, JUDGE
                   ACTION NO. 20-CR-00549

COMMONWEALTH OF KENTUCKY                                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Feodis Beal ("Beal") appeals his convictions for assault in the

second degree and being a persistent felony offender ("PFO") in the first degree.

Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2020, the Kenton County Grand Jury (the "Grand Jury") indicted Beal for assault in the first degree based on allegations that Beal had stabbed Lewis McElfresh ("McElfresh") in the abdomen during a physical altercation. In June 2021, the Grand Jury charged Beal in a superseding indictment with being a persistent felony offender ("PFO") in the first degree.

The Kenton Circuit Court (the "circuit court") held a three-day trial regarding Beal's two charges in late September and early October 2021. The jury ultimately returned a guilty verdict on the lesser-included charge of assault in the second degree. Additionally, the jury recommended Beal serve a total prison sentence of twelve years for assault in the second degree and being a PFO in the first degree. In November 2021, the circuit court sentenced Beal to serve twelve years' imprisonment in accordance with the jury's recommendations. This appeal followed.

We will discuss further facts as they become relevant to our analysis.

## ANALYSIS

### a. The Circuit Court Did Not Err by Denying Beal's Directed-Verdict Motion

Beal's first claimed error is that the circuit court improperly denied his motion for a directed verdict. Specifically, Beal contends that the Commonwealth of Kentucky (the "Commonwealth") did not produce any evidence

concerning an essential element of second-degree assault: namely, that Beal had used a "dangerous instrument" to stab McElfresh during the parties' altercation.

We first address an issue brought up in Beal's brief regarding the preservation of his directed-verdict argument. Beal notes that the jury ultimately convicted him of a lesser-included offense – second-degree assault – and not the offense with which he was initially charged – first-degree assault. Thus, Beal seeks palpable error review if this Court finds that he failed to preserve his directed-verdict argument regarding second-degree assault.

In *Ray v. Commonwealth*, the Kentucky Supreme Court held that:

> in order to preserve an alleged directed verdict issue for appeal, criminal defendants must: (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; and identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge the Commonwealth failed to prove.

611 S.W.3d 250, 266 (Ky. 2020) (emphasis in original). Further, the *Ray* Court noted that to preserve the issue for appellate review properly, "defendants are not required to move for directed verdict on any lesser included offenses to a particular charge in order to preserve the issue; and, nor are they required to object to instructing the jury on that particular charge to preserve the alleged directed verdict error." *Id*.

Here, at the close of the Commonwealth's proof, Beal moved for a directed verdict on the basis that the Commonwealth had not met all the elements of first-degree assault because the Commonwealth did not present eyewitness testimony that Beal had possessed or used a knife – or another dangerous instrument – to cause a significant injury to McElfresh. The circuit court denied Beal's request, finding sufficient evidence for first-degree assault.

However, while Beal renewed his motion for a directed verdict at the close of all evidence, his oral motion to renew his motion for a directed verdict was entirely silent as to any discussion regarding "the particular elements of that charge the Commonwealth failed to prove." *Id*. *See also Exantus v. Commonwealth*, 612 S.W.3d 871, 887 (Ky. 2020) (The "failure to properly renew a motion for directed verdict at the close of all the evidence will render the issue unpreserved"). Under Kentucky law, "[t]he defendant's *motions* for directed verdict must . . . state the specific element(s) of that charge the Commonwealth failed to prove." *Ray*, 611 S.W.3d at 257-58 (emphasis added).

However, while this issue may be unpreserved, Beal has requested that this Court review his claims under the "palpable-error" standard under Kentucky Rule of Criminal Procedure ("RCr") 10.26. RCr 10.26 states:

> A palpable error which affects the substantial rights of a party may be considered by . . . an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a

> determination that manifest injustice has resulted from
> the error.

The Kentucky Supreme Court has stated, "[t]o justify relief under the palpable error standard, an error must be obvious and serious and it also must have resulted in manifest injustice." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 29 (Ky. 2011) (citation omitted). A failure to grant a directed verdict based on the proof's insufficiency is necessarily palpable error under this standard. *Commonwealth v. Goss*, 428 S.W.3d 619, 627 (Ky. 2014). Thus, we will proceed with palpable error review to determine whether the proof was sufficient to convict Beal of second-degree assault.

> When analyzing a motion for a directed verdict, a circuit court must:
>
> draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserve[e] to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Moreover, "[t]he trial court is authorized to grant a directed verdict if the Commonwealth has produced no more than a scintilla of evidence; if the evidence is more than a mere scintilla and it would be reasonable for the jury to return a verdict of guilty based

on it, then the motion should be denied." *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013) (citation omitted), *overruled on other grounds by Ray*, *supra*.

We now turn to the elements of second-degree assault under Kentucky law. Under Kentucky Revised Statute ("KRS") 508.020(1), a person is guilty of second-degree assault when he or she "intentionally causes serious physical injury to another person[,]" "intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument[,]" or "wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument." Thus, second-degree assault can be committed in one of three ways: by intentionally causing serious physical injury to another; by intentionally causing physical injury to another with a deadly weapon or dangerous instrument; or by wantonly causing serious physical injury to another with a deadly weapon or dangerous instrument. KRS 508.020(1)(a),(b), and (c). "Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(17).

In this case, we find sufficient proof in the record to support Beal's conviction for second-degree assault and, thus, discern no palpable error or manifest injustice. Beal admitted that he was at the scene, had been using drugs,

and that McElfresh was injured during the fight. Moreover, the physical evidence from the scene and McElfresh's testimony supported this evidence. McElfresh testified at trial that Beal was the initial aggressor on the night that McElfresh sustained his injuries. The pair had exchanged insults, and Beal had ultimately walked onto McElfresh's porch and hit McElfresh while he was seated. A physical altercation ensued, during which McElfresh and Beal fell into McElfresh's moped and onto a concrete area, where they continued to struggle. Thereafter, McElfresh extricated himself from the fray and realized that he had sustained a serious injury to his abdomen, indicative of having been stabbed by a sharp object.

Additionally, McElfresh testified that the area around the moped was clean and that no other objects were on the ground. McElfresh further testified that he had not fallen on or touched any object while he and Beal were fighting on the concrete pad, provided a picture of his moped, and testified that it did not contain anything sharp enough to inflict the injuries he suffered. The Commonwealth also offered evidence from a nearby surveillance video camera, which recorded the altercation. McElfresh testified that the video correctly portrayed the events from that night and testified concerning the portion of the video he believed showed Beal stabbing him.

Moreover, Dr. Krishna Athota, McElfresh's treating physician at the hospital, testified that McElfresh's abdominal wound was "clean" and compared it

to a scalpel cut. Dr. Athota believed a long piece of sharp metal caused the wound. Finally, Dr. Athota testified that McElfresh's injury was "life threatening."

In this case, McElfresh's testimony, the video surveillance footage, Dr. Athota's testimony that the injury was caused by a knife or a long piece of sharp metal, and the other testimonial proof were evidence "sufficient to allow a reasonable jury to find guilt beyond a reasonable doubt." *Goss*, 428 S.W.3d at 627. Thus, we find no palpable error and affirm the circuit court as to this issue.

### b. <u>The Circuit Court Did Not Infringe Upon Beal's Right to a Fair Trial</u>

Beal next alleges that his right to a fair trial under the United States and Kentucky Constitutions was violated based on the Commonwealth's remarks during its closing argument. Specifically, Beal takes issue with the following comments:

> [McElfresh] didn't get rid of the moped right away. You heard that [McElfresh] was in the hospital for a while. I mean, the moped was still there. It wasn't as if the first thing he did the next day was get rid of it. So, if this was such a key, important piece of evidence for the defense[.]"

At that point, Beal's counsel objected and argued that the Commonwealth was impermissibly shifting the burden of proof from the Commonwealth to Beal. The circuit court sustained the objection, and the Commonwealth complied with the circuit court's ruling.

On appeal, Beal again argues that the Commonwealth was asserting in its comments that Beal could have investigated the moped to corroborate his theory of the case and, in so doing, shifted the burden of proof from the Commonwealth to Beal. However, we see no error that requires redress. Beal received the relief he sought during the trial when the circuit court sustained his objection, and the Commonwealth never made an argument to the jury that could be considered burden-shifting. Because the record fails to demonstrate any error on behalf of the circuit court, we affirm as to this issue.

### c. The Circuit Court Did Not Err in Allowing McElfresh to Remain in the Courtroom

Beal's final argument is that the circuit court violated Kentucky Rule of Evidence ("KRE") 615 when it allowed McElfresh to attend the entire trial, even though he testified as a witness. Beal also asks this Court to hold that if a victim is not sequestered, he or she waives his right to rebut any testimony per KRE 615.

The Kentucky Supreme Court has discussed KRE 615 as follows: "[u]pon a party's invocation of 'the rule,' *i.e.*, upon the party's request for separation of witnesses, KRE 615 requires the trial court to exclude trial witnesses, so that they cannot hear the testimony of other witnesses." *McAbee v. Chapman*, 504 S.W.3d 18, 24 (Ky. 2016). Indeed, "[t]he thrust of KRE 615 is to ensure that witnesses do not alter their own testimony based on what they hear from other

-9-

witnesses." *Hatfield v. Commonwealth*, 250 S.W.3d 590, 594 (Ky. 2008). The application of KRE 615 by a trial court is reviewed for an abuse of discretion. *McAbee*, 504 S.W.3d at 31.

On the other hand, Marsy's Law is a constitutional amendment that the voters ratified in the fall of 2020. It is codified as Section 26A in Kentucky's Constitution and entitled "Rights of victims of crimes." Marsy's Law states that a victim has "the right to be present at the trial and all other proceedings, other than grand jury proceedings, on the same basis as the accused[.]" KY. CONST. § 26A.

In this case, McElfresh was the second witness called by the Commonwealth during the trial. After McElfresh's direct testimony, the defense invoked the rule of separation of witnesses and requested that McElfresh be subject to recall. The defense further requested that McElfresh be sequestered as a witness, arguing that KRE 615 prohibited McElfresh from remaining in the courtroom for the remainder of the trial.

The circuit court denied Beal's motion and held that since McElfresh had testified early in the trial, the potential for prejudice from McElfresh altering his testimony was low. Specifically, the circuit court determined that the record already contained McElfresh's recollection of the events. Thus, the jury would be able to judge any contradictory statements McElfresh later made as reflecting negatively on his credibility. It further noted that a constitutional amendment

-10-

controls over a rule of evidence. Later in the trial, the Commonwealth called McElfresh in rebuttal to dispute Beal's assertion that McElfresh must have been injured on the moped.

A recent Kentucky Supreme Court opinion dealt with almost identical facts as those present in this case. *Cavanaugh v. Commonwealth*, No. 2021-SC-0441-MR, 2022 WL 17726279, at *1 (Ky. Dec. 15, 2022). Cavanaugh was indicted and charged with first-degree assault and being a persistent felony offender in the first degree. At his trial, the Commonwealth requested that the assault victim be permitted to remain in the courtroom during the trial despite the invocation of KRE 615, and Cavanaugh objected. *Id*.

The trial court overruled Cavanaugh's objection and allowed the victim to be present during the trial, noting that Marsy's Law allows a victim to be present during the proceedings. *Cavanaugh*, 2022 WL 17726279, at *2. The Court went on to state that:

> [w]hile Cavanaugh is correct that KRE 615 and Section 26A of the Kentucky Constitution conflict with each other he is wrong when he argues KRE 615 should take precedence over a provision of the Kentucky Constitution. Instead, this Court has held that "constitutional rights prevail over conflicting statutes and rules." *Commonwealth v. Barroso*, 122 S.W.3d 554, 558 (Ky. 2003). Normally this Court addresses constitutional rights in the context of vindicating the rights of the accused. However, this principle remains the same where, under Marsy's Law, a victim has constitutional rights as well.

The Court went on to state, "[i]mportantly, however, in the event an application of Marsy's Law should violate a defendant's federal constitutional rights, then this Court would be compelled to remedy such a violation. U.S. Const. art. VI, cl. 2." *Id.* Thus, the Court also discussed the potential prejudice to Cavanaugh, stating that Cavanaugh had been "unable to point to any prejudice caused by the trial court permitting [the victim] to remain in the courtroom." *Id.* The Court noted that "[w]hile this case raises no issues of prejudice to Cavanaugh, there may arise concerns for due process relating to the testimony of victims in the future. *The best course of action is for trial courts to have the victim testify first so that no question of improper influence on their testimony occurs.* KRE 611." *Id.* at *2 n.3.

Multiple federal courts have also determined that a trial court's refusal to sequester witnesses "does not amount to a deprivation of [a defendant's] constitutional rights[.]" *Mathis v. Wainwright*, 351 F.2d 489, 489 (5th Cir. 1965) (citation omitted); *see also Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988) ("A refusal to exclude ('separate') witnesses until they testify is not a denial of due process . . . the due process clause does not incorporate every refinement of legal procedure designed to make trials fairer or more accurate[.]").

In this case, we see no error in the circuit court allowing McElfresh to remain in the courtroom during the trial. McElfresh's testimony was at the

beginning of the trial, as discussed in *Cavanaugh*, alleviating any potential prejudice. Further, although the Commonwealth recalled McElfresh to the stand for rebuttal, the jury was apprised of any inconsistent or contradictory statements he may have made.

While Beal relies on KRE 615, it is a rule of evidence and not a rule of constitutional law. *See McAbee*, 504 S.W.3d at 31 (explaining that a violation of Rule 615 is a "non-constitutional error[]"). Thus, to the extent that KRE 615 conflicts with the "express language" of any portion of the Kentucky Constitution, the Constitution prevails.

In his brief, Beal references several Kentucky Supreme Court cases which discuss KRE 615 and its exceptions. However, such cases predate the enactment of Kentucky Constitution Section 26A in 2020 and, therefore, do not apply to this case.

## **CONCLUSION**

We affirm the Kenton Circuit Court's judgment and conviction for the foregoing reasons.

ALL CONCUR.

-13-

BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky