RENDERED: JUNE 2, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1007-MR

COMMONWEALTH OF KENTUCKY                               APPELLANT

v.          APPEAL FROM ROCKCASTLE CIRCUIT COURT
            HONORABLE JOHN G. PRATHER, JR., JUDGE
            ACTION NO. 22-CR-00012

FREDDIE J. CROMER                                        APPELLEE

AND

NO. 2022-CA-1048-MR

COMMONWEALTH OF KENTUCKY                               APPELLANT

v.          APPEAL FROM ROCKCASTLE CIRCUIT COURT
            HONORABLE JOHN G. PRATHER, JR., JUDGE
            ACTION NO. 22-CR-00012

FREDDIE J. CROMER                                        APPELLEE

AND

NO. 2022-CA-1049-MR

COMMONWEALTH OF KENTUCKY                               APPELLANT

v.                        HONORABLE JOHN G. PRATHER, JR., JUDGE
ACTION NO. 22-CR-00012


FREDDIE J. CROMER                                     APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND KAREM, JUDGES.

GOODWINE, JUDGE: The Commonwealth of Kentucky ("Commonwealth")
appeals an order of the Rockcastle Circuit Court for an *in-camera* review of the
victim's mental health records. After careful review, we reverse and remand with
directions to enter an order denying Freddie Cromer's ("Cromer") motion
requesting the victim's mental health records.

According to the criminal complaint, on October 25, 2021, Cromer
had an altercation with the victim, his girlfriend. The victim claimed she
discovered Cromer was cheating on her, and he called her a liar. The victim
grabbed Cromer's phone to look at his messages, and he began chasing her through
the house. Cromer then grabbed her from behind; punched her multiple times in
the face, head, and body; and threw her onto the floor. The victim grabbed Cromer

by the crotch, and he fell on top of her, injuring her knee, and causing a broken leg and torn ACL.  After the incident, the victim sought an emergency protective order ("EPO") and domestic-violence assault charges.

Initially, Cromer was charged with fourth-degree assault, but based on the severity of the victim's injuries, the charge was elevated.  On January 28, 2022, Cromer was indicted on second-degree assault.[1]

Cromer filed multiple motions to obtain the victim's mental health records.  First, on February 16, 2022, Cromer requested "the Commonwealth to provide the mental health records of the complaining witness."  Record ("R.") at 36.  In support, he alleged:  "(a) [the victim] has previously been hospitalized due to mental illness; (b) her mental health goes to her credibility; [and] (c) [victim]'s mental health records would be exculpatory evidence at the trial of this matter." *Id.*  Second, on April 12, 2022, Cromer renewed his motion.

Third, on June 29, 2022, Cromer filed a motion requesting exculpatory evidence.  Cromer requested, "Any and all mental health records of the complaining witness.  This would include any hospitalizations due to her mental illness, and any psychologist, psychiatrist and counseling records and disability records in connection with her mental health."  R. at 70.  Cromer's request was based on the same rationale as his first motion.

---

[1] Kentucky Revised Statutes ("KRS") 508.020 (Class C felony).

The Commonwealth responded objecting to the request. The Commonwealth argued, in part, that Cromer's assertions had not met his burden of establishing a reasonable belief that the records in fact contained exculpatory information.

On July 8, 2022, the circuit court held a hearing on the matter. The circuit court determined it would order the victim's mental health records to be produced for an *in-camera* inspection if the providers objected to the defense counsel's subpoenas. The healthcare providers denied the records request, so the circuit court issued three written orders for the records to be provided for an *in-camera* review. On July 22, 2022, the circuit court ordered the Rockcastle Circuit Clerk to "notify the trial court of any and all mental health/disability proceedings filed against the victim," which the Commonwealth appealed in No. 2022-CA-1007. R. at 83. On July 27, 2022, the circuit court ordered The Ridge Behavioral Health System to "immediately provide to the Court any and all mental health records regarding the victim" which the Commonwealth appealed in No. 2022-CA-1048. R. at 84. On August 8, 2022, the circuit court ordered Rockcastle Regional Hospital to "immediately provide to the Court any and all mental health records regarding the victim," which the Commonwealth appealed in No. 2022-CA-1049. R. at 91. The circuit court set an *in-camera* review for September 9, 2022, for all

records. The Commonwealth filed this interlocutory appeal under KRS 22A.020(4).

On appeal, the Commonwealth argues the circuit court abused its discretion in ordering the production of the victim's mental health records. "We review a trial judge's decision concerning discovery issues under an abuse of discretion standard." *Hilton v. Commonwealth*, 539 S.W.3d 1, 9 (Ky. 2018) (quoting *Brown v. Commonwealth*, 416 S.W.3d 302, 308 (Ky. 2013)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 7 (quoting *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)).

In *Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003), the Supreme Court of Kentucky set the requirements for determining whether a witness's mental health records contain exculpatory evidence and, thus, are discoverable. The Supreme Court determined: "If the psychotherapy records of a crucial prosecution witness contain evidence probative of the witness's ability to recall, comprehend, and accurately relate the subject matter of the testimony, the defendant's right to compulsory process must prevail over the witness's psychotherapist-patient privilege." *Id.* at 563. Then, the Supreme Court set the burden a defendant must prove for a circuit court to conduct an *in camera* review of the records: "*in camera* review of a witness's psychotherapy records is

authorized only upon receipt of evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence." *Id.* at 564. Stated differently, "the proponent of the disclosure order bears the initial burden of identifying specific records, or at least specific institutions or medical professionals in possession of such records. The proponent must then establish a reasonable belief that such records contain exculpatory information." *White v. Willett*, 456 S.W.3d 810, 813 (Ky. 2015).

Here, though Cromer identified specific institutions, he failed to provide any evidence that the victim's mental health records contained exculpatory evidence. In filing his motion requesting the victim's mental health records, Cromer attached an affidavit stating:

> I have known [the victim] for more that [sic] 7-8 years. I know that she has mental health issues because I have picked her up at 2 mental health facilities. I am also aware that she is on disability for mental health concerns and she takes medication for those concerns.

R. at 72.

At the hearing, Cromer's counsel argued why the defense needed the victim's records, and Cromer testified:

> Defense: This case started out as assault 4th and then elevated to [felony assault]. . . . We had a preliminary hearing and . . . [the victim] basically always starts off and says she had a seven-year relationship with [Cromer]. So he knows very well her mental-health hospitalizations. I'm asking, judge, that you review

those. You don't have to give them to me right off but review them. My concern is – and I filed one motion already about the castle doctrine. This whole thing arose in his home. Her snatching a cell phone from him. I need to see her – and I believe she's on mental disability as we speak. I need to know, is she paranoid schizophrenic? What is her diagnosis? And I do believe that it goes to credibility.

. . .

In this case that's all there is, him versus her. That's it. That's the whole case basically. And the events happened within his home. I've got to have those records in order to do my defense.

. . .

I'm just saying it goes to the heart of my defense. This lady is established to have – and it wasn't like [what the Commonwealth] is saying, just going in and checking [her mental health] – I believe, if I'm right, she was commanded, like a mental-health warrant, to go in. Not that she just went in on her own.

Judge: You mean to be evaluated.

Defense: Like a mental health, to see if she's a danger to herself or others. . . .

Judge: Whether she's a danger to herself or others is not really a question of credibility. But, her credibility can be brought into [inaudible] if she has been treated for something that relates to that. Okay, [Commonwealth] what did you say?

Commonwealth: Judge, counsel is free to attack her credibility. However, that doesn't override the privileges afforded somebody getting mental-health treatment, and there is case law to show that is a severe hurdle to

overcome. . . . I think the case law in the Commonwealth is pretty steady [on] that. In this situation, it is not one of those situations that overcomes that right to privacy and right to treatment . . . .

Judge: I'm going to order that there be an *in-camera* review of the mental-health records. And I'm looking there only for things that would be exculpatory based upon [Cromer's] statement that – and I'm going to ask him that, with permission from counsel.

Defense: Go ahead.

Judge: Do you believe that her mental health has involved questions of her truthfulness when she's been treated in the past?

Cromer: Yes, it does, and she gets very mean.

Judge: Well mean doesn't have anything to do with it. Truthfulness is what it is has to do with. And if I examine this and all it shows is that she gets very mean, I'm not going to let you have that.

. . .

In this particular instance, and because they were together so long, he would at least be a person who observed her demeanor and truthfulness over that period of time. I find that to be sort of a special circumstance. I'm going to sustain it.

Video Record ("VR") 7/8/22. 11:00:26-11:06:40.

Cromer merely stated in his affidavit that the victim received mental health treatment at two facilities. Cromer and counsel could not identify specific date ranges of the victim's treatment that would contain exculpatory information.

-8-

Cromer also made a blanket request for mental health/disability proceedings against the victim. During the hearing when the circuit court asked Cromer if the victim's mental health affected her truthfulness, he said yes and she's mean. This does not establish a reasonable belief that the victim's mental health records contain exculpatory evidence.

Defense counsel's argument during the hearing also shows that this is a fishing expedition. Counsel stated Cromer believed the victim had received mental health treatment, but he did not know if she had a specific diagnosis that would impact her credibility.

Based on defense counsel's argument and scant evidence at best, the circuit court entered three blanket orders with no specific date range for all of the victim's records from two institutions and all mental health/disability proceedings filed against the victim. As in *Willett*, these blanket orders "epitomize the type of court sanctioned fishing expedition that *Barroso* cautioned against. Those records are nothing more than a shotgun blast of discovery authorizing an overly broad invasion into [the victim's] privacy." *Willett*, 456 S.W.3d at 813.

Additionally, the circuit court failed to correctly apply the second prong of *Barroso* in assuming Cromer established a reasonable belief that the victim's mental health impacted her truthfulness simply because they were together for a long time when Cromer presented no evidence to support his

contention. Again, as in *Willett*, "[i]n contrast to the procedure outlined in *Barroso*, the trial court in the present case failed to articulate evidence sufficient to establish a reasonable belief that Appellant's psychotherapy records contained exculpatory evidence. The court made no findings whatsoever in" its orders. *Id.*

Despite Cromer's argument that he reasonably believes the victim's mental health records contain exculpatory evidence, he failed to articulate evidence supporting his position to the circuit court. "A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem." *Barroso*, 122 S.W.3d at 563 (quoting *California v. Pack*, 201 Cal.App.3d 679, 248 Cal.Rptr. 240, 244 (1988), *overruled on other grounds by California v. Hammon*, 15 Cal.4th 1117, 938 P.2d 986 (1997)). As such, we hold the circuit court abused its discretion in ordering an *in-camera* review of the victim's mental health records.

For the foregoing reasons, we reverse the orders of the Rockcastle Circuit Court and remand with directions to enter a new order denying Cromer's request for the victim's mental health records from Rockcastle Regional Hospital, the Ridge Behavioral Health System, and mental health/disability records from the Rockcastle Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:                BRIEF FOR APPELLEE:

Daniel J. Cameron                    James L. Cox
Attorney General of Kentucky         Mt. Vernon, Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky