**Patrick Paul BURKE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000431–MR.**

Supreme Court of Kentucky.

Sept. 23, 2010.

Shelly R. Fears, Assistant Public Advocate, Department Of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Michael John Marsch, Assistant Attorney General, Office Of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Patrick Paul Burke, was convicted by a Jefferson Circuit Court jury of second-degree escape and first-degree persistent felony offender. For these crimes, Appellant received a sentence of twenty years' imprisonment. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110.

Appellant asserts two arguments on appeal: 1) that the trial court erred by denying his request for a jury instruction on the justification defense of "choice of evils"; and 2) that the trial court erred by giving an admonition to the jury over his objection. For the reasons set forth herein, we affirm Appellant's conviction and sentence.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2007, approximately six and a half years into a twenty-five year sentence in the penitentiary, Appellant was placed by the Department of Corrections into a halfway house in Louisville. On November 11, 2007, with the permission of corrections officials, Appellant checked out of the halfway house for an unsupervised visit to the dentist. However, instead of going to the

dentist, Appellant fled the state. He was apprehended on February 22, 2008, in Newcastle, Delaware, after a vehicular pursuit.

On February 25, 2008, the Jefferson County Grand Jury handed down an indictment charging Appellant with second-degree escape and with being a first-degree persistent felony offender. The jury trial commenced on May 19, 2009.

At the trial, Appellant testified that he was attacked and robbed several times at the halfway house by other residents. He stated that the first attack occurred in the house's "quiet room" where the assailants forced his head into a sofa and robbed him of money given to him by his daughter. Appellant testified that a second attack occurred in the bathroom during which he was beaten with a floor mop.

The third attack occurred on the day before Appellant's dental appointment. Appellant testified that during this attack the assailants beat him and stole property from his personal locker while one of the attackers held a towel over his head. Appellant testified that the men threatened to kill him unless he brought them $200 after his trip to the dentist. Appellant had no way to get the $200. Because of this threat, Appellant claims that he believed he had to leave the halfway house or he would be killed. Thus, the next day during the trip to the dentist, Appellant escaped.

Appellant was scheduled to meet with the parole board a few weeks after his escape. He testified that he feared that if he fought back during each of these attacks he would be given a "write-up" that might result in his being denied parole. Appellant claimed he could not sleep at night due to his fear of being attacked.

The Commonwealth presented the testimony of several witnesses that Undermined Appellant's story. Appellant's halfway house counselor testified that Appellant never reported any of the attacks he said occurred. The counselor testified that if Appellant had reported any of the attacks he could have been transferred to another halfway house facility. A fellow halfway house inmate who was to go to the dentist with Appellant testified that on the day of the escape Appellant did not seem upset or nervous. Other testimony was presented that the attacks alleged by Appellant never appeared on any of the thirty security cameras located around the halfway house facility. However, other testimony indicated that there were not security cameras in the "quiet room" or bathroom where two of the alleged attacks occurred.

After hearing all of the evidence, the jury convicted Appellant of second-degree escape and of being a first-degree persistent felony offender. Appellant was sentenced to five years' imprisonment on the second-degree escape conviction, escalated to twenty years' imprisonment because of the persistent felony offender conviction.

## I. THE EVIDENCE PRESENTED AT TRIAL DID NOT SUPPORT AN INSTRUCTION ON THE "CHOICE OF EVILS" DEFENSE

■ Appellant first argues that the trial court erred by not providing a jury instruction on the "choice of evils" defense. This issue is preserved for review by Appellant's request for this instruction at trial.

The principle of justification known as "choice of evils" is codified in KRS 503.030, and provides in relevant part:

conduct which would otherwise constitute an offense is justifiable when the defendant believes it to be necessary to avoid an *imminent* public or private injury greater than the injury which is

sought to be prevented by the statute defining the offense charged.... (emphasis added). The term *imminent* is defined in KRS 503.010(3) as "impending danger." The Commentary to KRS 503.030 notes that to qualify for the "choice of evils" defense "a defendant need only to have such a belief" in the necessity of his actions to avoid an *imminent* injury.

Appellant argues that he should have received a "choice of evils" instruction because he believed that if he did not flee the halfway house, he would be robbed again, or even killed. Appellant cites to *Pittman v. Commonwealth*, 512 S.W.2d 488 (Ky. 1974), for the proposition that a prisoner who is in imminent danger from other inmates can escape from the prison and be entitled to a "choice of evils" instruction. However, we believe that the facts of this case are not analogous to *Pittman*, and that the trial court correctly denied Appellant's request for the instruction.

In *Pittman*, the defendant was cornered by four prisoners in a prison farm dormitory. Pittman did not believe that he could get to a prison guard in time for protection, so he fled the farm. After Pittman was recaptured he stated "I had but one choice. Leave, stay there, kill somebody, or get killed." *Id.* at 489. Key to our predecessor court's determination that Pittman was entitled to a "choice of evils" defense was that Pittman fled his attackers at the moment they confronted him. The danger of Pittman either being seriously injured or seriously injuring one of his attackers was truly "imminent."

In this case, the danger of Appellant being seriously injured or killed was not "imminent." Appellant testified that after his attackers initially threatened him, they left him alone. *Hours* later, Appellant undertook his escape without ever reporting the alleged attacks or the threat to the halfway house authorities or to the police.

Had Appellant reported the attack to the proper authorities, they could have prevented the harm he feared. Thus, a jury could not reasonably conclude that Appellant's conduct was "necessary to avoid an imminent public or private injury." *See Montgomery v. Commonwealth*, 819 S.W.2d 713 (Ky.1991) (holding that a "choice of evils" jury instruction was not supported by the evidence when the defendant escaped from a prison facility based on the fear he may be harmed when released into the general prison population). We affirm the trial court's denial of Appellant's request for a "choice of evils" instruction because it is unsupported by the evidence.

## II. THE TRIAL COURT DID NOT ERR BY PROVIDING THE ADMONITION TO THE JURY OVER APPELLANT'S OBJECTION

Appellant next argues that the trial court erred in giving what he considers an improper and overreaching admonition to the jury immediately prior to instructing the jury on the law of the case. While conferring with counsel about proposed jury instructions, the trial court denied Appellant's tendered "choice of evils" instruction, and expressed concern that Appellant's focus on the "choice of evils" defense may result in jury nullification. To make sure that the jurors understood they could not create their own "choice of evils" defense, the trial court reasoned that he should expressly admonish the jury to follow the jury instructions he would provide.

Appellant objected, arguing that the trial court's proposed admonition was "too much weight from the bench," and deprived him of a fair trial by treating his case differently from other criminal cases. The trial court overruled Appellant's objection and gave the following admonition

to the jury prior to reading the instructions:

Ladies and gentlemen we are close in time, since you've heard all the evidence now, we're close in time to the point where all that remains for me to do is instruct you as to the law, for you to begin ... for you to hear arguments of counsel and for you to begin your deliberations.

I'll remind you of a couple of things as we go through this. First thing, I'll remind you of is that the argument of counsel while it may be important is not evidence. To the extent that they say something that is different than your independent recollection or collective recollection of the evidence you are to go with what you recall and not what they say.

Moreover, the decision in this case is yours and yours alone. The argument is intended to help you see it from the respective parties' perspective and they will tell you what they believe the evidence showed and how you should apply the law to that evidence. But that's your job and the fact that they think it should be one way, while important, is not determinative. What you think is determinative. What you think is what rules the day.

So I'll also remind you that no question asked by either counsel at any time is evidence for you to consider. Nor is anything that I specifically told you not to consider, which I think I did on a couple of occasions, I don't recall specifically, but if I told you that you are not to consider that, then you are not to consider it and you need to police yourself and each other if something is otherwise verboten comes up in the jury room.

That also holds true with respect to the admonition I gave you about any prior history, criminal history, on [Appellant's] part. He's not being tried for that today. The only thing he's being tried for is whether he escaped from the [halfway house] or not, period. The fact that he, whether he has a million prior convictions or won the Congressional Medal of Honor twice, it doesn't make any difference. He's either guilty or not guilty based on the application of the law that I'm going to instruct you on to the facts as you determine them.

The ... you are to decide this case based solely on the application of the law to the facts as you determine. Along with the application of your individual and collective common sense. You have to make that decision in your own mind, but you do have a duty to consult with your fellow jurors in forming your opinion.

You should deliberate with a view toward reaching a verdict if you can do so without doing violence to your individual conscience and you must reach that decision dispassionately. That means without being influenced by any prejudice, any passion, sympathy, or emotions that you feel for one side or the other. This is essentially an intellectual enterprise. It's what you think, not what you feel.

And to the extent that you are influenced by how you feel, there is an opportunity for you to display that in a criminal case but that is generally speaking during the sentencing phase. What you feel is perfectly appropriate and the way that you give into that is in picking the appropriate penalty within the range of applicable penalties, assuming that the Commonwealth has proven the case beyond a reasonable doubt and if they have not you'll never get to the penalty. And considerations of penalty can play no part in your deliberations as to whether a person is guilty or not

guilty, it's just not part of the equation. Does everybody understand that?

If at anytime during these proceedings, and this is a standard instruction I don't think I've said or done anything but just to make sure. If anything that I have said or done leads you to believe that I have an opinion about how this case should come out or about what you should do, I can assure you, you are mistaken. But even if you weren't, what I think doesn't matter either. It's only what you think that matters. I decide the law you, you all decide the facts, and you all apply that law to those facts and tell us what the answer is, period.

The bench conferences and how I have ruled with respect to various objections is not a sign of ... I favor one side or the other. It is merely an indication of how I believe the law should be applied with respect to that specific question in that specific instance.

I'm going to instruct you as to the law now. And I will remind you that this is the law. It is not optional. There is ... it is the same law that protects everyone of us. It is the same law that binds everyone of us inside and outside this courtroom. To the extent that it is different that what you thought the law of escape was or different from ... what you expected the law to be in this case after listening to the proof, you are to disregard those notions in favor of applying the law as I instruct you. Does everybody understand that? That being the case, I'll instruct you as follows....

The trial court then read the guilt phase instructions to the jury.

Appellant argues that the admonition violated the "bare bones" principle which guides our approach to jury instructions. *See Peak v. Commonwealth,* 197 S.W.3d 536, 545 (Ky.2006). He also argues that the long admonition made it difficult for the jury to independently exercise its judg-ment. In effect, Appellant argues that the admonition served as a directed verdict of guilt—that the admonition told the jury that the judge believed Appellant was guilty. We disagree.

While the trial court's admonition was lengthy, we do not conclude that it was inappropriate. It told the jurors to review the facts as they remembered them, to exercise their own independent judgment, and to apply the facts to the law as instructed. It was not slanted toward the Commonwealth, and did not amount to a "directed verdict of guilt" as Appellant claims. We do not regard the trial court's admonition as improper or prejudicial because it only served to reinforce the principle that the jury must comply with the jury instructions. *See Johnson v. Commonwealth,* 105 S.W.3d 430, 441 (Ky.2003) (stating that a jury is presumed to follow an admonition given by the trial court). There is no error here.

### CONCLUSION

Thus, for the foregoing reasons, Appellant's convictions and sentences are affirmed.

All sitting. All concur.